Signed and Filed: November 4, 2013



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ) | Bankruptcy Case |
| ) | No. 12-31854DM |
| CHERYL SANDRI, ) | |
| ) | |
| Debtor. ) | Chapter 13 |
| _____) | |
| CHERYL SANDRI, ) | Adversary Proceeding |
| ) | No. 13-3165DM |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CAPITAL ONE, N.A.; U.S. BANK, as ) | |
| Trustee for Chevy Chase Mortgage ) | |
| Funding LLC Mortgage-Backed ) | |
| Certificates, Series 2006-1 Trust; ) | |
| T.D. SERVICE COMPANY; QUALITY LOAN ) | |
| SERVICE CORP.; and MORTGAGE ) | |
| ELECTRONIC REGISTRATION SYSTEMS, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

MEMORANDUM DECISION ON THE MOTION OF CAPITAL ONE AND MERS TO
DISMISS ADVERSARY PROCEEDING UNDER RULE 7012

On August 30, 2013, the court held a hearing on the motion of Capital One, N.A. ("Capital One"), U.S. Bank, as Trustee for Chevy Chase Mortgage Funding LLC Mortgage-Backed Certificates, Series 2006-1 Trust ("U.S. Bank"), and Mortgage Electronic Registration

-1-

Systems, Inc. ("MERS") (collectively, "Defendants") to dismiss the adversary complaint ("MTD") filed against them by plaintiff Cheryl Sandri ("Debtor"). The parties each filed supplemental briefs on September 9, 2013, and the court took the MTD under advisement. For the reasons set forth below, the court is GRANTING the MTD.[1]

I. BACKGROUND[2]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When deciding a motion to dismiss, the court considers "only allegations contained in the pleadings, exhibits

---

[1] Debtor named two other defendants, T.D. Service Company ("T.D.") and Quality Loan Service Corporation ("Quality"). Neither T.D. nor Quality joined the motion to dismiss, although Quality has filed a declaration of non-monetary status pursuant to California Civil Code section 2924l. The Ninth Circuit has not ruled on whether a 2924l declaration is recognized in federal court, although the District Court for the Northern District of California has repeatedly held that this procedural mechanism is not included in Federal Rule of Civil Procedures 7 and 12, and thus is inapplicable under the *Erie* doctrine to actions commenced in federal court. See, e.g., Iniquez v. Vantium Capital, Inc., 2013 WL 1208750 at *2 (N.D. Cal. Mar. 25, 2013); Vann v. Wells Fargo Bank, 2012 WL 1910032 (N.D. Cal. May 24, 2012); Kennedy v. PLM Lender Servs., Inc., 2012 WL 1038632 at *2 (N.D. Cal. Mar. 27, 2012). This court need not decide the issue in the context of the MTD, but will limit the relief granted to the movants only. That said, given the nature of the court's reasoning, there are no viable claims assertable against T.D. and Quality in the complaint.

[2] The following narrative is taken from the complaint and other court documents that provide uncontested facts. For the purposes of the MTD, the court assumes the allegations of the complaint to be true. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam).

Even though the court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion, two exceptions exist. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). First, the court may consider material that a plaintiff properly submits as part of the complaint or, even if not physically attached to the complaint, material that is not contested as to authenticity and that is necessarily relied upon by the plaintiff's complaint. Id. Second, under Federal Rule of Evidence 201, the court may take judicial notice of matters of public record. Id. at 689. Here, the court is considering the allegations of the complaint, the documents referenced in the complaint (although not attached), and documents filed by Debtor in her main bankruptcy case. Pursuant to Federal Rule of Evidence 201, the court takes judicial notice of Debtor's bankruptcy filings as these are matters of public record.

Debtor has asserted five causes of action in her complaint: (1) Slander of Title; (2) Wrongful Foreclosure; (3) Express and Implied Breach of Agreement; (4) Violation of California Civil Code 2923.5; and (5) Violation of the Unfair Business Practices Act ([Cal. Bus. & Prof. Code] § 17200). With the exception of the fourth cause of action, all of the claims arise out of the securitization of her note and deed of trust.

In December 2005, Debtor executed a promissory note ("Note") in favor of Chevy Chase Bank, F.S.B. ("Chevy Chase"). To secure repayment of the Note, Debtor also executed a first priority deed

-3-

of trust ("DOT") against property located in Redwood City, California (the "Property") in favor of Chevy Chase. Chevy Chase was identified as the Lender and Trustee, and MERS was identified as the "beneficiary" and nominee for the lender and lender's successors and assigns. See paragraphs 6-7 of the complaint; see also Debtor's Motion to Value Security and Avoid Lien and to Declare Lien as Wholly Unsecured (with accompanying memorandum of points and authorities, Debtor's supporting declaration and exhibits) filed by Debtor in her main case (12-31854) (collectively referred to as the "Lien Strip Motion") on August 21, 2012 at Docket Nos. 18, 18-1, 18-2 and 18-3. In her declaration in support of the Lien Strip Motion, Debtor stated that as of the petition date, the balance due on the Note was approximately $346,875.

The DOT expressly provides that Debtor "understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, releasing and canceling this Security Instrument." See DOT at page 3 (Docket No. 18-3 in Debtor's main case). In addition, the DOT provides:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer

unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

See id. at page 11 (paragraph 20).

In paragraph 7 of the complaint, Debtor alleges that in 2006 Chevy Chase bundled and sold her mortgage (which became securitized pursuant to a pooling and service agreement ("PSA")) to Chevy Chase Mortgage Funding LLC Mortgage-Backed Certificates, Series 2006-1 Trust ("CCFM 2006-1 Trust"), with U.S. Bank acting as Trustee.[3] The closing date of the PSA was March 17, 2007. See paragraph 23 of the complaint. Debtor also alleges in paragraph 8 that in 2008, she entered into a mortgage loan modification with Chevy Chase and MERS. Debtor admits in paragraph 9 of the complaint that in September 2010, Chevy Chase "fully merged with Capital One Bank and ceased conducting business under the name Chevy Chase."

Debtor alleges in paragraph 12 of the complaint that on

---

[3]Defendants state in their memorandum of points and authorities in support of their MTD that Chevy Chase was retained as servicer of the loan, but do not provide any independent evidence of a servicing agreement. Nonetheless, Debtor did execute a loan modification with Chevy Chase in 2008, and did enter into an adequate protection agreement with Capital One, N.A. (successor-in-interest to Chevy Chase, as admitted in paragraph 9 of the complaint) after Capital One filed a motion for relief from stay because Debtor had purportedly failed to make seven post-petition payments. See Motion for Relief From Stay at Docket No. 49 and Adequate Protection Order at Docket No. 54, both filed in the main case (No. 12-31854).

September 13, 2011, an assignment of her DOT was recorded; through this assignment, MERS "purports to transfer the beneficial interest in Plaintiff's Deed of Trust to Capital One." Debtor avers that the assignment was signed by Charity Henson as an "Assistant Secretary of MERS." On the same day, a notice of default was recorded. On October 11, 2011, Capital One recorded a Substitution of Trustee, naming T.D. Service as the trustee. Charity Henson signed that substitution as a vice president of Capital One. See paragraphs 12-13 of the complaint.

Debtor does not dispute her liability under the Note and DOT. Instead, she alleges in the complaint that Capital One and its trustee (now Quality Loan Services Corporation) or assignees cannot enforce the Note and DOT, because (1) MERS did not have the legal right to assign or transfer any interest in the DOT, (2) Charity Henson was a robo-signer without authority to sign documents on behalf of MERS; (3) any assignment occurring after the closing date of the PSA (March 17, 2007) is invalid. See paragraphs 18-32 of the complaint.

No foreclosure sale has occurred, although an unrescinded notice of default was recorded on June 7, 2012. See paragraph 15 of the Complaint. Debtor filed her chapter 13 case fifteen days later.

II. DISCUSSION

Approximately three weeks prior to the hearing on the MTD the Bankruptcy Appellate Panel for the Ninth Circuit (BAP) and the California Court of Appeals for the Fifth District issued two cases involving similar facts and claims, but reaching disparate

Case: 13-03165    Doc# 24    Filed: 11/04/13    Entered: 11/05/13 08:30:15    Page 6 of 17

conclusions.  In Nordeen v. Bank of America, N.A. (In re Nordeen), 495 B.R. 468 (9th Cir. BAP 2013), BAP affirmed the dismissal of an action for monetary and declaratory relief, holding that the securitization of a deed of trust loan did not in any way alter or affect standing to enforce the deed of trust, and that debtors did not state a plausible cause of action for misleading communications regarding the identity of the note holder and deed of trust beneficiary/trustee.  In contrast, in Glaski v. Bank of America, 218 Cal. App. 4th 1079 (Cal. App. 5th Dist. 2013), the court held that borrowers have standing to challenge foreclosure on the basis that assignments of loan were void, as they occurred after the closing date of the securitized trust agreement to which borrowers were not the parties.

At the hearing on the MTD, the court directed the parties to provide supplemental briefing regarding these two cases (neither of which is binding on the court).  Having considered both supplemental briefs and other case law regarding the standing of borrowers to assert claims arising out of securitizations (including other California Court of Appeals decisions rejecting claims similar to those of Debtor), the court does not believe that Debtor has stated any cognizable claim arising from the securitization and assignments of the Note and DOT.  The court will address each of Debtor's arguments in turn.

    A.    <u>The Purported Robo-Signing Does Not Give Rise to a Claim For Relief</u>

Debtor contends that Charity Henson is a robo-signer who was

not authorized to act on behalf of MERS,[4] but this contention does not give rise to a claim of fraud where borrowers (like the Debtor here) do not dispute that they defaulted on the loan. "As to the robo-signer allegations, there does not appear to be anything about 'robo-signing' the notice of default or the notice of substitution that makes them invalid or ineffective. Even if true, 'robo-signing' does not have any bearing on the validity of the foreclosure process here." Elliott v. Mortgage Electronic Registration Systems, Inc., 2013 WL 1820904 at *2 (N.D. Cal. Apr. 30, 2013), *citing* Orzoff v. Bank of America, N.A., 2011 WL 1539897 at *2-3 (D. Nev. Apr. 22, 2011) (holding that plaintiff failed to state a claim that trustee breached its duty by "robosigning" documents related to loan where plaintiff did not dispute that she defaulted on her mortgage or that she received required notices);

---

[4]Debtor indicates in her supplemental brief that she is not challenging the authority of a nominee to initiate foreclosure proceedings but is instead pursuing questions regarding the chain of title. The court thus assumes that Debtor is abandoning her position in paragraphs 16-20 of the complaint, in which she alleges that "any purported assignment of the [DOT] from MERS to any entity is false and wrongful as MERS does not own the beneficial interest in the deeds of trust maintained in its database" and that MERS could not validly assign any interest in the DOT "because it is not and was not a pecuniary beneficiary." Even if Debtor had not abandoned these contentions, they would not have survived the MTD. Courts have repeatedly addressed and rejected the contention that MERS lacked authority to assign mortgage instruments or to appoint successor trustees, even after the original promissory note has been assigned to a trust pool. See, e.g., Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011) (MERS does have the authority to "split" the note and DOT and assign the DOT and note to other entities); Cedano v. Aurora Loan Servs., LLC (In re Cedano), 470 B.R. 522, 531 (9th Cir. BAP 2012) ("The transfer of the Note as part of the securitization process [does] not affect MERS' right as a nominee under the Deed of Trust."); see also Benham v. Aurora Loan Servs., 2009 WL 2880232 (N.D. Cal. 2009) ("Other courts in this district have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the Deed of Trust when the original promissory note is assigned to a trust pool.").

-8-

Bucy v. Aurora Loan Servs., LLC, 2011 WL 1044045 at *6 (S.D. Ohio Mar. 18, 2011) (plaintiff failed to state a claim for fraud based on purported "robo-signing" where "Plaintiff d[id] not dispute the accuracy of any of the salient facts, such as the amount owed or the amount in default."). Debtor here does not dispute that she is in default.

B. Debtor Cannot Assert a Claim for Breach of the PSA

Debtor relies on Glaski in asserting that any assignment of the Note that occurred after the closing date of the PSA is ineffective and thus Defendants cannot enforce the Note and DOT. The court disagrees, as Glaski is inconsistent with the majority line of cases and is based on a questionable analysis of New York trust law.

1. *The Weight of Authority is Against Glaski*

While Glaski allowed a borrower to challenge foreclosure on the basis that a securitized mortgage trustee's attempt to accept the loan after a trust's closing date was void under New York law (the law governing the pooling and servicing agreement), it is an outlier. A majority of district courts in California have held that borrowers do not have standing to challenge the assignment of a loan because borrowers are not party to the assignment agreement. See Patel v. Mortgage Electronic Registration Systems, Inc., 2013 WL 4029277 (N.D. Cal. Aug. 6, 2013) ("[T]he securitization process did not break the chain of title; MERs [sic] does have authority to assign the DOT . . .; Plaintiffs have failed to plead breach of the DOT *and do not have standing to assert a breach of any PSA*; and the robo-signing allegations have not been properly pled.") (emphasis added); Aniel v. GMAC Mortg.,

-9-

LLC, 2012 WL 5389706 at *4 (N.D. Cal. Nov. 2, 2012) (plaintiffs lacked standing to challenge assignment of deed of trust based on noncompliance with pooling and service agreements)); Ganesan v. GMAC Mortgage, LLC, 2012 WL 4901440 at *4 (N.D. Cal. Oct. 15, 2012) (citing cases) ("[T]o the extent Plaintiff bases her claim on the theory that Defendants allegedly failed to comply with the terms of a Pooling and Servicing Agreement, the Court notes that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement."); see also Gilbert v. Chase Home Fin., LLC, 2013 WL 2318890 at *3 (E.D. Cal. May 28, 2013) (listing numerous federal district cases holding that borrowers lack standing to challenge their liability under a note and security instrument by alleging that the assignment of such instruments did not comply with a PSA).[5]

More importantly, other California Courts of Appeal have rejected claims similar to those asserted in Glaski and by Debtor here. See, e.g. Siliga v. Mortgage Electronic Registrations Systems, Inc., 219 Cal. App. 4th 75, 161 Cal. Rptr. 3d 500 (Cal.

---

[5] Courts have similarly rejected other theories that securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach. Zadrozny v. Bank of NY Mellon, 720 F.3d 1163 (9th Cir. 2013) (applying Arizona law, the Ninth Circuit held that the terms of the mortgage instrument precluded borrowers' claims that assignee lacked standing to foreclose nonjudicially); Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1042-43 (N.D. Cal. 2009) (rejecting as "both unsupported and incorrect" the "theory that all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool"); Chavez v. California Reconveyance Co., 2010 WL 2545006 (D. Nev. June 18, 2010) ("The alleged securitization of Plaintiffs' Loan did not invalidate the Deed of Trust, create a requirement of judicial foreclosure, or prevent Defendants from being holders in due course.")).

-10-

App. 2d Cir. 2013) (decided on August 27, 2013) (borrowers lacked standing to complain about loan servicer's and assignee's alleged lack of authority to foreclose on deed of trust where borrowers were in default under the note, absent evidence that the original lender would have refrained from foreclosure); Jenkins v. JP Morgan Chase Bank, N.A., 216 Cal. App. 4th 497, 156 Cal. Rptr. 3d 912 (Cal. App. 4th Dist. 2013) (borrower does not have the right to bring a preemptive judicial action to determine defendants' standing to foreclose; foreclosing party need not have beneficial interest in promissory note and deed of trust); Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 272, 129 Cal. Rptr. 3d 467 (1st Dist. 2011) (to recover on wrongful foreclosure claim, borrower must demonstrate that the alleged imperfection in the foreclosure process was prejudicial; no prejudice exists where borrower was in default and the assignment of the loan did not interfere with the borrower's ability to pay).

### 2. *Glaski's Reasoning is Not Persuasive*

In determining that the borrower had standing to challenge the validity of assignments that occurred after a trust document's closing date, the Glaski court held that under New York law, a transfer made in violation of the terms of the trust document was void, not voidable. The Glaski court acknowledged that under California law, a third party "and particularly the obligor" cannot successfully challenge the validity or effectiveness of the transfer when the assignment is merely voidable, not void. Glaski, 218 Cal. App. 4th at 1094. This court agrees. This court, however, does not agree with the next prong of the Glaski analysis: that an assignment violating the trust agreement or

-11-

pooling service agreement is void under New York state law and thus subject to challenge by non-parties.

New York intermediate appellate courts have repeatedly and consistently found that an act in violation of a trust agreement is voidable, not void. See Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (1993); Leasing Serv. Corp. v. Vita Italian Rest., Inc., 171 A.D.2d 926, 927, 566 N.Y.S.2d 796, 797 (1991); Hine v. Huntington, 118 A.D. 585, 592, 103 N.Y.S. 535, 540 (1907); In re Levy, 69 A.D.3d 630, 632, 893 N.Y.S.2d 142, 144 (2010). In rejecting claims similar to those asserted here and in Glaski, the court in Calderon v. Bank of Am. N.A., 2013 WL 1741951 at *11 (W.D. Tex. Apr. 23, 2013), applied New York trust law:

> Even assuming, as Plaintiffs insist, that New York law governs interpretation of the PSA, and assuming that the transfer of Plaintiffs' loan to the Trust violated the terms of the PSA, <u>that after-the-deadline transaction would merely be voidable at the election of one or more of the parties — not void. Accordingly, Plaintiffs, who were not parties to the PSA, do not have standing to challenge it.</u> [E]ven if it is true that the Note was transferred to the Trust in violation of the PSA, that transaction could be ratified by the beneficiaries of the Trust and is merely voidable.

Calderon, 2013 WL 1741951 at **10-11 (emphasis added) (analyzing New York statutory and case law on trusts).

The Glaski court cited only two cases in support of its determination that acts by a trustee in contravention of a trust were void. The first, Wells Fargo Bank, N.A. v. Erobobo, 39 Misc. 3d 1220(A) (N.Y. Sup. Ct. 2013), was issued by a New York trial court. Its reasoning and holding has been called into doubt. See Koufos v. U.S. Bank, N.A., 2013 WL 1189502 (D. Mass. March 21, 2013); Orellana v. Deutsche Bank Nat. Trust Co., 2013 WL 5348596 D. Mass. Aug. 30, 2013). The second is an unpublished opinion by

-12-

the Bankruptcy Court for the Southern District of Texas that relies on Erobobo and that is inconsistent with a district court decision from that district issued just days earlier. In re Saldivar, 2013 WL 2452699, at *4 (Bankr. S.D. Tex. June 5, 2013) (transfer was void); *compare to* Sigaran v. U.S. Bank Nat. Ass'n, 2013 WL 2368336 at *3 (S.D. Tex. May 29, 2013) (holding that "assignments made after the Trust's closing date are voidable, rather than void").

      3. *Post-Glaski Authority is Persuasive*

In Dick v. Am. Home Mortg. Servicing, Inc., 2013 WL 5299180 at *4-5 (E.D. Cal. Sept. 18, 2013), the plaintiffs relied on Glaski to challenge a DOT assignment as void. Observing that a majority of California courts have held that "borrowers do not have standing to challenge the assignment of a loan because borrowers are not party to the assignment agreement," the Dick court noted that it did not even have to reach the issue because the plaintiffs could not establish prejudice. "[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests." Id. (citation omitted). "California courts find a lack of prejudice when a borrower is in default and cannot show that the allegedly improper assignment interfered with the borrower's ability to pay or that the original lender would not have foreclosed under the circumstances." Id. at *3 (emphasis added).

Debtor here was in default when the notice of default was recorded; no notice of sale has been recorded and no foreclosure sale has occurred. Shortly after the notice of default was

-13-

recorded, Debtor filed her chapter 13 petition. Debtor resolved Capitol One's motion for relief from stay by entering into an adequate protection stipulation, by which she agreed to cure her nonpayment of at least seven post-petition monthly payments. Debtor obtained an order valuing the junior lien on the Property at zero, asserting that the amount she owed on this note and DOT exceeded the value of the property. Under these circumstances, she cannot show that the assignment of the note or DOT after the effective date of the PSA interfered with her ability to pay or that the original lender would not have foreclosed. She therefore cannot show prejudice from the purportedly defective assignments.

### 4. *Nordeen* is Persuasive

While Nordeen involved mortgage instruments governed by Nevada law, its analysis is instructive and persuasive. The BAP affirmed an order dismissing without leave to amend a pro se complaint filed against the alleged successor beneficiary on a deed of trust and against the servicer. The BAP adopted the majority line of cases rejecting borrowers' theories that securitization and violations of the securitization trust agreement render DOTs unenforceable. "Since the securitization merely creates a separate contract, distinct from [plaintiffs'] debt obligations under the note, and does not change the relationship of the parties in any way, plaintiffs' claims arising out of the securitization fail." Nordeen, 495 B.R. at 480.

In reaching this holding, the BAP observed:

> [H]ome loan borrowers are not purchasing an investment when they enter into a loan agreement to purchase or refinance a home. When they sign a promissory note and mortgage or trust deed secured by their real property, they are entering into a contract for a loan transaction

-14-

>           on fixed terms, and any "upside" or investment incentive
>           to enter into the transaction is based on a prospective
>           increase in the value of the subject real property.
>           Accordingly, the borrower's loan contract (the Note and
>           Trust Deed in this appeal) is distinct and separate from
>           any securities transaction in the "secondary market"
>           encompassing assignment of the contract.

Id. at 479-80. The panel then noted that in the trust deed, the borrowers had agreed that the note (or a partial interest in the note) and the mortgage instrument could be transferred without prior notice. The deed of trust here contains the identical language. Thus, like the borrowers in Nordeen, Debtor consented to the securitization by explicitly agreeing that she understood that the lender may transfer the note.

The BAP also rejected the borrowers' fraud claims arising from confusing and misleading communications as to who held the note and who were the beneficiary and trustee under the mortgage. "Whatever confusion may have resulted from the alleged communications," the borrowers did not rely on those communications when they signed the note and trust deed. Id. at 484. "And since they had defaulted [in their loan payments], they can assert no damages from the alleged communications." Id. In the present case, Debtor similarly did not rely on any alleged misrepresentations by Defendants, all of which purportedly occurred prior to the petition date. To the contrary, as late as 2012 (after such communications purportedly occurred), she obtained a benefit by acknowledging her obligations to under the note and DOT: an order valuing the second lien at zero dollars.

    C.    <u>Debtor Has No Remedy for Violation of Civil Code Section 2923.5</u>

Debtor alleges in 41-43 of the complaint that Capital One and

Case: 13-03165    Doc# 24    Filed: 11/04/13    Entered: 11/05/13 08:30:15    Page 15 of 17

Quality violated California Civil Code section 2923.5 because they failed to contact her, in person or by telephone, at least 30 days prior to recording the Notice of Default on June 7, 2012. Even if Defendants failed to contact Debtor as stated, the court cannot grant any effective remedy. Civil Code section 2923.5 requires, before a notice of default may be filed, that a lender contact the borrower in person or by phone to "assess" the borrower's financial situation and "explore" options to prevent foreclosure. The only remedy afforded by section 2923.5 is, however, a one-time postponement of the foreclosure sale before it happens. Cedano, 470 B.R. at 533 ("The sole remedy for a failure to comply with Cal. Civ. Code § 2923.5 is 'limited to postponement of an impending foreclosure.'") (citing multiple cases). In the seventeen months since the June 2012 recording of the notice of default, no notice of sale has been recorded. There is no pending foreclosure sale to postpone.

III. CONCLUSION

Debtor's complaint does not state a cognizable claim for several reasons. First, as the District Court for the Northern District has held in Patel and Ganesan, borrowers do not have standing to enforce a pooling and servicing agreement. As Debtor is neither a party to or a third party beneficiary of the PSA, she cannot invalidate her contractual obligations under the note and DOT because the assignments occurred after the closing date of the PSA. Second, as in Dick, Herrera, and Siliga, Debtor cannot demonstrate any prejudice from the purportedly improper assignment. Third, even if the claims were cognizable, they are premature. No foreclosure sale has occurred and preemptive relief

-16-

Case: 13-03165    Doc# 24    Filed: 11/04/13    Entered: 11/05/13 08:30:15    Page 16 of 17

"would result in the impermissible interjection of the courts into a nonjudicial [foreclosure] scheme enacted by the California Legislature." Jenkins, 216 Cal.App.4th at 513, *citing* Gomes v. Countrywide Home Loans, Inc., 192 Cal. App. 4th 1149, 121 Cal. Rptr. 3d 819 (Cal. App. 4th Dist. 2011). Finally, as in Nordeen, the DOT contains an express consent by Debtor to the assignment of the note and DOT.

With the exception of the claim for violation of California Civil Code section 2923.5 (upon which the court cannot grant effective relief, as discussed above), all of the claims asserted by Debtor arise from the purported improper assignment of the note and deed of trust.[6] Therefore, for the foregoing reasons, the court will DISMISS Debtor's claims against the moving Defendants without leave to amend. Defendants' counsel should serve (in accordance with B.L.R. 9021-1) and upload an order granting the motion for the reasons set forth in this memorandum decision.[7]

*** END OF MEMORANDUM DECISION ***

---

[6] Debtor conceded in paragraph 36 of the complaint that her claim for violation of California Business and Professions Code section 17200 "is a derivative cause of action" and that her "ability to pursue this cause of action depends on the success or failure of [her] substantive causes of action."

[7] The court will not dismiss the action against the non-moving defendants (Quality and T.D.) in the absence of a motion to dismiss by them or a voluntary dismissal by Debtor. If Debtor believes that she has independent grounds for claims against Quality and T.D. notwithstanding the holdings in this memorandum decision, she should file and serve a 30-day (at a minimum) notice that a status conference is scheduled for January 31, 2014, at 1:30 p.m.

-17-